GEORGE COMAN AND CLARK F. PHILLIPS v. JAMES THOMPSON.

*Mortgage on crop invalid as against grantee without reservation.*

A transfer of the legal title of land without reservation passes the title to crops growing thereon at the time of such transfer, and a subsequent chattel mortgage of such crops by such grantor, though still remaining in possession, will pass no rights as against one claiming under the grantee in the conveyance of the land.

Error to Eaton. Submitted June 29. Decided Oct. 12.

REPLEVIN. Defendant brings error. Reversed.

*Corbin & Cobb* and *H. A. Shaw* for plaintiffs in error.

*H. S. Maynard* and *E. A. Foote* for defendant in error.

GRAVES, J. This cause was before the court at a former term and was then remanded for a new trial. 43 Mich. 389. And it now comes up again after the trial so ordered. The subject of contention is a quantity of stacked wheat, being the yield of about ten acres and taken off in the summer of 1879. Thompson seized it by replevin and the jury have found in his favor. The vital question relates to the legal title. His right originates in a chattel mortgage given to him by Joseph Demmon, dated November 23, 1878, but not delivered until December 3d and not filed until the 24th of that month. The wheat was then growing.

On their part the plaintiffs in error deny that this mortgage created any interest, and contend moreover that the property in the wheat was vested in them by means of certain conveyances of the land. The chattel mortgage described the wheat as being on the northeast quarter of the southeast quarter of section one, in town two north, of range three west, in Eaton county. It seems that in 1872 one James Sumerix owned the premises and mortgaged the north thirty-seven acres to Horace J. Perrin and subsequently conveyed the entire forty acres to Demmon who went in and kept possession until about the 10th of April, 1879.

Perrin foreclosed the Sumerix mortgage by advertisement, and became purchaser thereon of the thirty-seven acres which the mortgage covered. The year of redemption was to expire November 2, 1878, and shortly before that time Thompson called on Demmon who was unable to redeem and had abandoned all purpose of doing so, and bargained with him to be allowed to step in and get the land, and they agreed, as Thompson explains the matter in his testimony, that he, Thompson, should pay the mortgage amounting to about $800 and "secure to Demmon the right of staying there,—the privilege of staying upon this place a year and six months," Demmon undertaking to pay $120 for such privilege and agreeing to secure the same by chattel mortgage on

the wheat which was then on the ground. Thompson called on Perrin and obtained his stipulation to extend the redemption thirty days, which was subsequently enlarged to the 20th of December, 1878. Having made these several arrangements, with Demmon and Perrin, he contracted the whole forty acres to Phillips to pay and satisfy a mortgage which Phillips held against him. By this agreement it was provided that the thirty-seven acres should be deeded directly to Phillips by Perrin and finally that Phillips should also have a conveyance from Demmon in order to cover the residue of the forty acres, and it was a part of this transaction between Thompson and Phillips that the "privilege" that Thompson had promised Demmon should be secured to him.

Perrin deeded the thirty-seven acres as agreed about the 23d of November, and on the 3d of December Thompson procured Demmon to quitclaim the whole forty, and Phillips paid the agreed consideration. In regard to these deeds the record contains the following admission: "It is admitted by the parties that the title of the land upon which the wheat in question was growing at the time, passed to C. F. Phillips by virtue of the deeds; one from H. J. Perrin to C. F. Phillips and the one from Joseph Demmon and wife to C. F. Phillips and there was no reservation of the wheat in either of these deeds." Coman is in privity with Phillips and his right is supposed to rest on the same ground. After the deed from Perrin, and at the time Thompson was proceeding to have Demmon give the other, Phillips signed and gave to Thompson at his request a paper writing to be passed to Demmon on the delivery of the deed to come from Demmon, and the object was to secure to Demmon the before-mentioned "privilege" to stay on the place. Thompson took the paper and called on Demmon. Phillips was not a party to this interview between Thompson and Demmon. It was on the 3d of December before referred to, and Thompson on receiving the deed from Demmon to Phillips delivered to the former this writing signed by Phillips. It is to be assumed that it followed the arrange-

ment between Thompson and Demmon, as Thompson had explained it to Phillips in their negotiations. There seems to have been no dissatisfaction with its terms on any hand. It was on this same occasion that Thompson took the mortgage from Demmon on the parcel of wheat which was then growing on the place.

So much of this writing signed by Phillips as is now material is as follows: "And for a valuable consideration the said Phillips agrees that the said Thompson shall have control and possession of said land until April first, 1880, at which time the said Phillips is to have quiet and peaceable possession of same; it being understood and agreed however that on account of said Thompson having guaranteed possession as above to one Joseph Demmon, the present occupant of said land, that in case said Demmon should leave said premises before said April 1st, 1880, then said Phillips is to have possession. The said Joseph Demmon shall not assign or transfer this lease to any one. It is understood that the said Demmon shall have the privilege of sowing the orchard lot on said place next fall to wheat and divide the product of said crop. The said Phillips is to have one-third delivered in half bushel, and it is further understood that the said Demmon shall pay the whole tax against said land for the year 1878." At the interview referred to of the 3d of December between Thompson and Demmon when this paper was delivered to Demmon he executed a brief one by which he promised to give up possession to Phillips on the first of April, 1880, but its delivery by Demmon is seriously disputed and the weight of proof seems to favor the conclusion that it remained in his hands until he left. But be this as it may it is not perceived that it could aid Thompson.

There was still another paper introduced on that occasion. It was an undertaking by Thompson to Demmon relative to the latter's occupancy, and it contained a reference to the chattel mortgage. It was a distinct matter between them, and not an ingredient of the transaction to which Phillips was a party and cannot be incorporated therewith to affect the construction adversely to his interests. It is a separate

fact with which he was not privy and can have no place against him. Indeed Thompson does not pretend that Phillips saw the document or knew of its existence.

Demmon of his own accord gave up possession to Phillips about April 10, 1879, and handed to him at the same time all the papers remaining with him bearing on the rights of the parties. And the inquiry arising is whether, as against Phillips, Thompson acquired by the chattel mortgage any legal right to the wheat.

Starting with the very proper concession in the record that the deeds passed to Phillips the legal ownership of the land, it must then be admitted further that the legal property in the wheat went with it, and remained in Phillips unless it was in some way reserved to Demmon or granted or assigned to him. It was not reserved to him by the deeds. That is acknowledged. The only remaining resort is to the paper writing signed by Phillips and above quoted. Did that instrument qualify the *prima facie* legal operation of the deeds and work a reservation of the wheat in Demmon's favor? or in case there was no reservation, did it apply and act by way of grant or assignment to him? The position of counsel is that it had the effect to reserve the legal right to Demmon; that is to say, that in securing the right to stay in possession eighteen months longer to the exclusion of Phillips, it served to continue and carry along Demmon's ownership up to the time of harvest. As matter of legal and not mere moral, or perhaps equitable consideration, this view encounters insurmountable objections.

The validity of the foreclosure title is not questioned, and that title was conveyed a week or more before this writing from Phillips was given, and for the same space of time before the chattel mortgage was delivered; and the transmission of that title must have involved the transfer of the legal title to nearly if not all the wheat. The record does not locate the crop on any precise spot and it cannot be assumed that it stood on any specific ten acres. It may have extended over the three acres not embraced by the Perrin

deed, or part way over it, or it may be that it did not touch it. Whatever may have been the fact in regard to the actual location of the crop, it is certain that a chief portion of it must have been on the thirty-seven acres deeded by Perrin. This was physically necessary. As that deed preceded the chattel mortgage and the paper given by Phillips, it took effect before they did, and no facts are shown to let in the doctrine of relation as against Phillips, admitting it to be applicable in principle, so far as to save the wheat from the operation of the deed. But this writing from Phillips carefully avoids the mention of any right to the growing wheat. Why was it? It was not overlooked. The subject of crops was present to the parties and pains were taken to provide expressly for a future sowing of wheat and for the division of interest in it and also for the delivery of Phillips' share. And yet the only thing stipulated about, independently of taxes and crops to be put in afterwards, was the possession of the place, and this possession was to be a mere privilege, and to be kept or not as Demmon should elect. The necessary inference would seem to be that the growing wheat was purposely not mentioned and that the reason was that Phillips did not understand that he was to be deprived of it.

The effect of this provision relative to possession is no greater in cutting down the granting operation of the deed than it would have been in case it had been inserted in them. And if that had been done it would not have produced the conveyance claimed. For it must be acknowledged that in case a person deeds his farm on which he has growing wheat and nothing is reserved except a privilege to stay on the place for a year or so with the right to put a specified field into wheat on shares, the legal title to the growing crop will follow the title to the land. The legal right to one will not be distinguishable from the legal right to the other.

No claim as we understand is set up that the property in the wheat was brought back to Demmon by grant or assignment, and no footing is perceived for any argument based on that theory.

It is needless to discuss the question whether the paper signed by Phillips is not technically a lease. The point possesses no practical importance. For admitting it to be, within some strained definition, what may be called a lease, it could have no force as a grant or assignment of the growing crop previously put in. If, as the present view assumes, the wheat passed by the deeds, the paper in question, though considered as a lease, did not retransfer it. The result is that Thompson not only failed in showing a legal title to the wheat, but made no case for the jury, and the plaintiffs in error were entitled to the direct charge to find in their favor which they asked for by their seventh request.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.